IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DWAYNE STOUTAMIRE,

        Plaintiff,

v.                                        Civil Action 2:22-cv-02037
                                        Chief Judge Algenon L. Marbley
                                        Magistrate Judge Kimberly A. Jolson

DR. ANDREW EDDY,

        Defendant.

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Dismiss. (Doc. 7). For the following reasons, the Undersigned **RECOMMENDS** that the Motion be **DENIED.**

**I.**        **BACKGROUND**

Plaintiff is a *pro se* inmate incarcerated at the Chillicothe Correctional Institution ("CCI") in Chillicothe, Ohio. The following allegations are from Plaintiff's Complaint, which, for the purposes of the Motion to Dismiss, the Court accepts as true.

When Plaintiff arrived at CCI, he reported sinus issues to an institution physician, Dr. Peppers. (Doc. 5 at 5). Dr. Peppers ordered a CT scan for Plaintiff sometime in August 2021. (*Id.*). The CT scan showed Plaintiff had a deviated septum and scarring in the lining of his sinus cavities. (*Id.*). Dr. Peppers sent a request to the Ohio Department of Corrections ("ODRC"), recommending that Plaintiff see a specialist. (*Id.*). Defendant, Dr. Andrew Eddy, denied the request, and Plaintiff was thus unable to see a specialist for additional medical attention. (*Id.*).

Plaintiff brings the present action under 42 U.S.C.§ 1983, alleging that Defendant acted with deliberate indifference to his medical needs when he denied the request for Plaintiff to see a specialist. (*See generally id.*). Plaintiff seeks a total of $700,000: $100,000 for compensatory

damages and $250,000 for punitive damages from "both individuals" (although Dr. Eddy is the only named Defendant). (*Id.* at 6). A previous screening of the Complaint clarified that only "Plaintiff's medical claim against Defendant Eddy" could proceed. (Doc. 4 at 4). Plaintiff also seeks an injunction requiring Defendant allow him to see a specialist. (Doc. 5 at 6).

On August 17, 2022, Defendant moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), alleging that the Complaint fails to state a claim of action. (Doc. 7 at 1). Plaintiff's response was due September 7, 2022, but he did not submit his response to the CCI mailroom until September 18, 2022. (Doc. 8 at 7). Thus, while Plaintiff is entitled to the mailbox rule for his filings, his response was still untimely. Regardless, in the interest of resolving the present Motion on its merits, the Court will consider the response in resolution of the Motion. Further, Defendant was provided an opportunity to reply to the response and did so. (Doc. 9). Now that all parties have had an opportunity to be heard, the Motion to Dismiss is ripe for consideration.

## II. STANDARD OF REVIEW

Rule 12(b)(6) requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. (*Id.* at 57). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see*

*also Brown v. Matauszak*, 415 F. App'x. 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, although "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III. DISCUSSION

Plaintiff's cause of action arises out of an alleged violation of 42 U.S.C. § 1983. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki,* 729 F.3d 610, 619 (6th Cir. 2013). Plaintiff contends that he was deprived of his Eight Amendment right when Defendant denied the request to see a specialist. (Doc. 5 at 5; Doc. 8 at 6). Defendant argues the Complaint fails to state a claim upon which relief may be granted. (Doc. 7 at 4–7). Particularly, Defendant says there is no suggestion in the Complaint that Defendant deliberately disregarded Plaintiff's serious medical needs. (*Id.* at 6). The Undersigned disagrees.

The Eighth Amendment prohibits prison officials from "'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). To state a claim for deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective component. *Id*. (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

To satisfy the objective component, Plaintiff must show the existence of a sufficiently serious medical need, meaning he is "incarcerated under conditions posing a substantial risk of serious harm." *Id*. (citing *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104; *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore*, 390 F.3d at 897). The Sixth Circuit Court of Appeals has explained that "where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' . . . it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Blackmore,* 390 F.3d at 899–900 (citation omitted).

To satisfy the subjective component, Plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). Although the subjective standard "is meant to prevent the constitutionalization of medical malpractice claims," a plaintiff need not show that an officer acted with the specific intent to cause harm. *Id*. Instead, the Sixth Circuit has held that "'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 836). Because government officials generally do not concede this subjective component, "it [is] permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge." *Id.*

First, Plaintiff alleges facts which, accepted as true, demonstrate that Plaintiff had a sufficiently serious medical need. So he has pled the objective component of his claim. Particularly, Plaintiff alleges that, after reviewing his CT scan, Dr. Peppers diagnosed that he "had a deviated septum and scarring in the lining of his sinus cavities[,]" and accordingly made the request that he see a specialist. (Doc. 5 at 5). Because his medical need was one that was diagnosed by a physician as mandating treatment, it is sufficiently serious. *Harrison*, 539 F.3d at 518. And even under the layperson standard, the Undersigned is willing to accept that a deviated septum is serious enough for the purposes of stating a claim at this early stage in the litigation. *See Rodriguez v. Lappin*, No. 08-347-GFVT, 2009 WL 2969510, at *5 (E.D. Ky. Sept. 11, 2009) ("This Court is willing to accept that a deviated septum is a serious medical condition, which finding satisfies the objective element of an Eight Amendment claim.").

Second, Plaintiff alleges facts which, accepted as true, demonstrate that Defendant knew of a substantial risk of harm to Plaintiff and then recklessly disregarded the risk by denying the request. This allegation satisfies the subjective component of his claim. Particularly, Plaintiff alleges that Dr. Eddy reviewed the request prepared by Dr. Peppers, denied it, and offered him no alternative medical treatment. (Doc. 5 at 5). As alleged, and making any reasonable inferences in Plaintiff's favor, Dr. Eddy was presented with facts from which he could and did infer a substantial risk to Plaintiff. He then disregarded that risk. Namely, he received the report of another physician who believed Plaintiff's condition required additional medical care, knew that Plaintiff was at a substantial risk of harm without additional care, and yet disregarded the risk by providing neither the requested referral nor any alternative treatment.

The last point is important. Defendant says Plaintiff's claim involves a "mere disagreement with treatment decisions" and maintains that Plaintiff's Complaint demonstrates that he "was

treated on several occasions for his deviated septum and scarring in the lining of his sinus cavities." (Doc. 7 at 6). Defendant thus tries to argue that this is a dispute about the adequacy of treatment, not the outright denial of treatment. But this mischaracterizes Plaintiff's allegations. The only medical attention identified by Plaintiff was the diagnosis of his condition by Dr. Peppers; he claims he never received any treatment for the condition. (Doc. 5 at 5; Doc. 8 at 5). Medical assistance that begins and ends with identification of a plaintiff's ailment is not a "mere disagreement" about care.

Indeed, a prisoner's claim for deliberate indifference is proper when "he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) (citation omitted). Here, Plaintiff has alleged an obvious need for medical treatment—Dr. Peppers diagnosed him with a sufficiently serious medical need and recommended follow-up treatment with a specialist. He further alleges that Dr. Eddy denied that reasonable request, and he is exposed to undue suffering as a result. (Doc. 8 at 5) ("Dr. Eddy is preventing me from seeing someone who could relieve my suffering."). At base, "prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Comstock*, 273 F.3d at 702. As alleged by Plaintiff, Defendant has not met that obligation.

The present case is thus easily distinguishable from those cases Defendant cites in which a plaintiff merely disagrees with the manner of treatment offered by prison authorities. *See, e.g.*, *Young v. Ky. State Reformatory*, No. 3:18-cv-P173-DJH, 2019 WL 2212395, at *5 (W.D. Ky. May 22, 2019) (screening a complaint in which the plaintiff, who was receiving psychological treatment services, disagreed with the defendant service provider's therapeutic approach of sitting in silence

6

during their sessions, as well as the defendant provider's refusal to reevaluate plaintiff in light of a recommendation by a psychiatric nurse). Notably, the record lacks any indication that Plaintiff received any treatment following Dr. Peppers' diagnosis and recommendation. And Defendant provides no indication that medical reasoning supported his denial of the request for a specialist. (*See generally* Docs. 7, 9). Such issues may be litigated by the parties at subsequent stages of the case with the aid of discovery. But, at this early stage of the litigation, the Undersigned does not find that Plaintiff has failed to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that the Motion to Dismiss (Doc. 7) be **DENIED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

**IT IS SO ORDERED.**

Date:  October 13, 2022                             /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE