**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DWAYNE STOUTAMIRE,**

**Plaintiff,**

**v.**

**DR. ANDREW EDDY,**

**Defendant.**

Civil Action 2:22-cv-2037
Judge Algenon L. Marbley
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 20).
For the following reasons, the Undersigned **RECOMMENDS** that the Motion be **DENIED.**

I.      **BACKGROUND**

Plaintiff, a prisoner at Chillicothe Correctional Institution ("CCI"), proceeds *pro se* and
brings this action under 42 U.S.C. § 1983.  He alleges that Defendant acted with deliberate
indifference to his serious medical needs in violation of the Eighth Amendment when Defendant
denied a referral for Plaintiff to see a medical specialist for his sinus conditions and instead
prescribed the over-the-counter drug Flonase.  (*See* Doc. 5).  During this time, Defendant Eddy
served as State Medical Director for the Ohio Department of Rehabilitation and Corrections
("ODRC") and oversaw ODRC's collegial review recommendations.  (Doc. 20 at 2; Doc. 28-1 at
4–7).

Specifically, Plaintiff alleges that he has suffered with sinus issues for years without relief.
The parties submitted medical records dated from 2017 to 2022.  (Doc. 5 at 5, Doc. 28 at 5; *see
also* Doc. 20-1 at 2–50 (documenting Plaintiff's sinus problems and related treatment from 2017–
2022)).  After Plaintiff arrived at CCI in 2021, Dr. Sonya Peppers ordered a "catscan" for his

sinuses.  (Doc. 5 at 5; *see also* Doc. 28-1 at 2).  The results showed Plaintiff had a "deviated septum and scarring in the lining of [his] sinus cavities."  (*Id.*; *see also* Doc. 20-1 at 5).  Based on these results, CCI medical staff sent a request for Plaintiff to see an ear, nose, and throat specialist ("ENT"), which Defendant denied in July 2021.  (Doc. 28 at 7; *see also* Doc. 20-1 at 7; Doc. 28-1 at 6–7).  For Plaintiff's condition, Defendant instead recommended only Flonase.[1]  (*See* Doc. 20-1 at 7).  Defendant explains that he and his office denied Plaintiff's referral to an ENT "[b]ecause it was judged to be medically unnecessary."  (Doc. 28-1 at 7).

Based on the medical records submitted by the parties, Plaintiff seemingly has an extensive history of sinus-related medical conditions and has used Flonase since at least 2018, long before Defendant's recommendation in 2021.  But the parties dispute how compliant Plaintiff has been with his prescribed Flonase regimen.  Defendant argues that Plaintiff failed to use Flonase as recommended, and accordingly, his symptoms did not improve.  (Doc. 20 at 4–8).  But Plaintiff says that he consistently used Flonase from 2018 until 2021, with no improvement in his symptoms.  (Doc. 41 at 6, 12–17; Doc. 28 at 15–16).

The medical records offer an overview of Plaintiff's medical conditions and treatments.  In 2017, Plaintiff underwent testing that confirmed his "chronic sinusitis."  (Doc. 20-1 at 12–14).  In 2018, medical staff saw Plaintiff for complaints that his "sinuses are always filled with mucous," causing him frequent headaches.  (*Id.* at 16).  Plaintiff informed medical staff that he tried "steroids by mouth, antibiotics, [and] nasal steroids" yet still felt "chronic symptoms."  (*Id.*).  A nasal endoscopy found "mild SD and turbinate hypertrophy," and medical staff concluded surgery may

---

[1] Flonase, also known as fluticasone propionate, is a type of corticosteroid.  Flonase's nasal-spray form is used to address symptoms from allergic reactions and nasal polyps, such as a runny nose, nasal congestion, and itchy, watery eyes.  *See What is Fluticasone Propionate?*, FLONASE, https://www.flonase.com/allergies/what-is-fluticasone-propionate/ (last accessed Jan. 2, 2024); *see also Fluticasone Nasal Spray*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/drugs/18853-fluticasone-nasal-spray (last accessed Jan. 2, 2024).

be needed. (*Id.* at 18). Plaintiff was then prescribed Flonase. (*Id.* at 18–19). But Plaintiff informed medical staff twice, in September 2018 and early 2019, that the Flonase provided no "therapeutic benefit." (Doc. 41 at 15; Doc. 20-1 at 21).

In 2019, medical personnel recommended surgery, which was completed in August 2019. (Doc. 20-1 at 22, 29 (stating Plaintiff underwent "nasal endoscopy, coblation of inferior turbinates, and outfracture of inferior turbinates"). Plaintiff's condition seemingly improved after his surgery, and he was prescribed Flonase to manage his remaining symptoms. (*Id.* at 36, 38). But Plaintiff's sinus symptoms soon reappeared, despite his continued use of Flonase post-surgery. (*Id.* at 39, 41 ("Using flonase nightly"), 42 (noting Plaintiff's Flonase use); Doc. 41 at 14). Again, in both 2019 and 2020, Plaintiff reported to medical staff that Flonase was ineffective in treating or alleviating his symptoms, even after he had been "100% complian[t]" for one year. (Doc. 41 at 14, 17).

Once Plaintiff arrived at CCI in 2021, Dr. Peppers ordered a CT scan to evaluate his sinuses. (Doc. 20-1 at 8; *see also* Doc. 28-1 at 2). The results showed Plaintiff has a deviated septum in addition to other sinus ailments. (Doc. 20-1 at 8). Based upon the CT scan, CCI medical personnel recommended that Plaintiff see an ear, nose, and throat specialist for his sinuses based on the results of the CT scan. (*See* Doc. 20-1 at 2, 6, 9 ("Refer to ENT for surgry [sic]")). On July 29, 2021, Defendant disagreed. He denied the recommendation for Plaintiff to see a specialist and instead provided an "alternative plan of care" of Flonase. (*See* Doc. 28-1 at 9; Doc. 20-1 at 7). Plaintiff submitted informal complaints and grievances and appealed the denial to the "institutional inspector." (Doc. 5 at 3). After those efforts failed, Plaintiff filed this action. (*See* Doc. 5).

Now, Defendant moves for summary judgment. (Doc. 20). The Motion is fully briefed and ripe for review. (Docs. 20, 28, 32, 41).

## II. STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (internal citations omitted). Ultimately, the Court asks, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## III. DISCUSSION

Plaintiff's claim arises out of an alleged violation of 42 U.S.C. § 1983, which requires him to "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). Plaintiff says that he was deprived of his Eighth Amendment right when Defendant denied a request for Plaintiff to see a specialist and instead prescribed him Flonase for his sinus problems. (Doc. 5 at 5; Doc. 28 at 7, 14–17). Defendant moves for summary judgment,

arguing that Plaintiff cannot show he acted with deliberate indifference to his medical needs, and raises a qualified immunity defense. (Doc. 20 at 9). The Undersigned first addresses Plaintiff's Eighth Amendment claim and then briefly turns to Defendant's qualified immunity defense.

### A. Eighth Amendment – Deliberate Indifference to Medical Needs

When prison officials show deliberate indifference to a prisoner's serious medical needs, their conduct can "constitute[]the unnecessary and wanton infliction of pain that is violative" of the Eighth Amendment of the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (stating that deliberate indifference to serious medical needs claims can state a cause of action under § 1983. To succeed on their claim, a prisoner must satisfy both an objective and a subjective requirement. *Darrah v. Krisher*, 865 F.3d 361, 367–68 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective component requires that the deprivation of medical treatment be "sufficiently serious." *Farmer*, 511 U.S. at 834 (internal citation omitted). A sufficiently serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 891 (6th Cir. 2004) (internal quotation omitted). For its part, the subjective component requires a prisoner to show that the official being sued "knew of and disregarded an excessive risk to inmate health or safety," meaning that the official was "aware of facts from which [an] inference could be drawn that a substantial risk of serious harm" existed, and the official drew that inference. *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (internal citations and quotations omitted).

The Sixth Circuit has distinguished cases where a prisoner is completely denied medical care from those where a prisoner received inadequate medical care. *Richmond*, 885 F.3d at 939. In the latter, courts are "generally reluctant to second guess medical judgments" unless the care

the prisoner received was "so woefully inadequate as to amount to no treatment at all." *Id.* And the Sixth Circuit has further found that "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372. When a prison official chooses "one medically reasonable form of treatment over another," they do not act with deliberate indifference. *Richmond,* 885 F.3d at 943.

But, in cases involving medical care in prisons, "less flagrant conduct may constitute deliberate indifference" than in other cases under § 1983. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). For example, a prisoner can establish deliberate indifference when they receive "medical care which is so cursory as to amount to no treatment at all." *Darrah*, 865 F.3d at 370 (quoting *Terrance*, 286 F.3d at 943). And providing an "easier and less efficacious treatment" can, at times, amount to deliberate indifference. *Darrah*, 865 F.3d at 372 (quoting *Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 552 (6th Cir. 2014) (internal quotation omitted)).

In his motion for summary judgment, Defendant argues that Plaintiff simply disagrees with the medical care he received from prison officials and that Plaintiff was provided a reasonable treatment plan. (*See* Doc. 20 at 9–12). "At best," Defendants say, Plaintiff has "alleged a state court medical malpractice claim, not a valid Eighth Amendment claim." (*Id.* at 11). So, to survive a motion for summary judgment, Plaintiff must establish sufficient material facts in support of his claim that Defendant Eddy acted with deliberate indifference to his serious medical needs. Plaintiff argues he has done so. Namely, Plaintiff alleges that he has serious sinus conditions and was compliant with a treatment of Flonase for years, that Flonase did not improve his symptoms, that he informed prison officials of its ineffectiveness, and that Defendant denied his doctor's

request for him to see a specialist and instead recommended only Flonase.  (*See generally* Docs. 28, 41).  Plaintiff says that this treatment was "so cursory as to amount to a conscious disregard" of his medical needs.  (Doc. 41 at 15–16, citing *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014)).

To start, this Court has previously determined that Plaintiff has alleged facts which, if proven true, show that Plaintiff has a sufficiently serious medical need to satisfy the objective requirement.  *Stoutamire v. Eddy*, No. 2:22-cv-2037, 2022 WL 7483020, at *3 (S.D. Ohio Oct. 13, 2022), *report and recommendation adopted*, *Stoutamire v. Eddy*, No. 2:22-cv-2037, 2023 WL 2241403 (S.D. Ohio Feb. 27, 2023).  His medical needs have been diagnosed by a physician as requiring treatment, and in the past, Plaintiff has received multiple medications, medical scans, and even surgery for his sinus conditions.  *See Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment[.]") (internal quotation omitted).  Thus, the only question is whether Defendant acted with deliberate indifference to Plaintiff's serious medical needs.  And the Undersigned finds that Plaintiff has provided sufficient evidence to overcome summary judgment and proceed on his claim.

First, Plaintiff has provided evidence to show that from 2018 to 2021, he regularly used Flonase for his medical issues.  (*See* Doc. 41 at 13–18).  Although Defendant argues Plaintiff used Flonase too inconsistently for this treatment to be effective, Plaintiff presents evidence that he was "100%" compliant with his Flonase treatment for at least one year and experienced no improvement in his medical condition.  (*Id.* at 14).  And importantly, the records show that Plaintiff told medical officials at CCI about this past use, showing that Defendant may have been aware of Flonase's alleged ineffectiveness when he reviewed Plaintiff's records and recommended the drug in July 2021.  (*See* Doc. 20-1 at 2 (telling CCI medical staff Flonase "does not work")); *see also*

*Comstock v. McCrary*, 272 F.3d 693, 703 (6th Cir. 2001) ("[It is] permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge.").

Additionally, Plaintiff cites medical evidence showing that his medical condition may have worsened over the years despite his use of Flonase. (Doc. 28 at 11). For example, based on the record currently before the Court, Plaintiff's first use of Flonase was in 2018. (*See* Doc. 20-1 at 18). Plaintiff says that he continued experiencing sinus pressure, congestion, trouble breathing, headaches, and other symptoms after starting Flonase. (Doc. 41 at 15; Doc. 20-1 at 19, 21, 25, 26, 38, 42, 48). Even with his allegedly consistent use of Flonase, Plaintiff needed surgery for his sinus conditions in 2019 and still experiences symptoms. (Doc. 28 at 11; Doc. 41 at 13–14). Since his surgery, Plaintiff has developed a deviated septum and says he has received no other treatment besides Flonase, despite multiple reports in his records of its ineffectiveness. (Doc. 28 at 11; *see also* Doc. 20-1 at 29 (documenting Plaintiff's surgery in 2019 and a "straight" septum), 35 (noting Plaintiff's septum was "midline"), 50 (discussing that Plaintiff's septum in 2021 was deviated to left); Doc. 20-1 (showing no other treatment for Plaintiff besides Flonase since arriving at CCI)).

What's more, the record before the Court offers no medical reason why Plaintiff was denied an opportunity to see a specialist or why Flonase was recommended instead of an alternative treatment. Defendant argues that Plaintiff did not meet the criteria for surgery based on a CT scan and that Plaintiff's request to see a specialist was deemed "medically unnecessary." (Doc. 20 at 11; Doc. 28-1 at 7). But Defendant has not submitted any statements from an expert explaining the criteria that must be met for surgical intervention or for a prisoner to see a medical specialist, nor does he offer any evidence supporting Flonase as a reasonable treatment in Plaintiff's case. *Cf. Richmond,* 885 F.3d at 943 (finding that a prison official's referral for a mental health evaluation instead of a prescription for psychiatric medication was a "medically reasonable"

8

response); *Williams v. Mehra*, 186 F.3d 685, 692 (6th Cir. 1999) (holding that prison officials were not deliberately indifferent when they gave a prisoner his medication in pill form, rather than liquid, despite his previous suicide attempts); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (noting that prison officials treated a prisoner's back injury with bed rest, muscle relaxants, and pain relievers, rather than ordering an x-ray, but such treatment did not show deliberate indifference). In sum, genuine disputes of material fact remain as to whether Defendant's actions were medically reasonable or amounted to deliberate indifference in violation of the Eighth Amendment.

Still, Defendant uses cases where prisoners with sinus problems challenged denials of their surgery requests and argues that Plaintiff simply disagrees with the adequacy of the "course of treatment prescribed." (Doc. 20 at 9–11). But those cases are distinguishable. In each of those instances, the prisoner received a more conservative course of treatment instead of a desired surgery—not a course of treatment he had previously tried for years to no avail. *Cf. Rodriquez v. Lappin*, No. 08-347-GFVT, 2009 WL 2969510, at *4 (E.D. Ky. Sept. 11, 2009) (noting that a prisoner continued to receive other treatments after his surgery request was denied); *Greer v. Daley*, No. 01-C-586-C, 2001 WL 34377922, at *1–2 (W.D. Wis. Dec. 27, 2001) (stating that the prisoner received nasal sprays, pain medication, and a special needs exemption to sleep near a vent, even though surgery was not recommended); *Anderson v. Fed. Bureau of Prisons*, 227 F. Supp.2d 657, 666 (E.D. Ky. 2002) (finding no deliberate indifference where a prisoner received medical excuses from work, pain medication, and, eventually, the surgery he requested). The Court finds these cases unpersuasive here, where Plaintiff was prescribed a drug that did not help his conditions, and Defendant offered no other treatment alternatives. *See also Crump v. Coleman*, No. 20-2084, 2022 WL 1421968, at *5 (6th Cir. Jan. 6, 2022) (finding that even though a prison doctor conducted tests to diagnose the cause of a prisoner's ailments, a reasonable juror could have

9

found him deliberately indifferent to the prisoner's pain where the prisoner reported that his prescribed medications did not help him and the doctor never recommended another drug or increased dosages); *Sedore v. Campbell*, No. 19-10311, 2022 WL 4483815, at *2 (E.D. Mich. Sept. 27, 2022) (finding that a prisoner's deliberate indifference claim should proceed to a jury where a prisoner was allegedly prescribed ineffective treatments by prison officials).

Indeed, this case is more similar to *Darrah v. Krisher*, in which summary judgment was denied where prison officials prescribed a drug to treat a prisoner's severe psoriasis, even though the prisoner repeatedly told them that it did not help him and that a more effective treatment existed. 865 F.3d at 369–70, 372–73. So too here. Plaintiff argues that, despite giving it a fair try, Flonase is so ineffective in treating his sinus issues that it is "essentially the equivalent of no treatment at all." *See id. at* 370; (Doc. 28 at 16). And this Court finds that like in *Darrah*, "the question of whether it was reasonable to continue to keep [Plaintiff] on a drug that had proven ineffective and whether that course of treatment constituted deliberate indifference is a question best suited for a jury." *Id.*

Accordingly, the Undersigned **RECOMMENDS** that Defendant's Motion for summary judgment for this claim be **DENIED**.

## B. Qualified Immunity

Defendant also raises a qualified immunity defense, arguing that Plaintiff's right is not "clearly established" and that the unconstitutionality of his medical care was not "so obvious that only a plainly competent official would fail to see it." (Doc. 20 at 12). Since Defendant has raised a qualified immunity defense, Plaintiff bears the burden of showing that Defendant is not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012)).

The doctrine of qualified immunity shields officials from civil liability if their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Richmond*, 885 F.3d at 947 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).  A qualified immunity analysis has two steps: (1) whether Plaintiff has alleged facts which, if viewed favorably to him, show that the Defendant violated a constitutional right, and (2) whether that right was clearly established such that a reasonable official, at the time of their conduct, would have understood that their actions violated that right. *Comstock*, 273 F.3d at 702.

As discussed above, a genuine dispute of material fact exists as to whether Defendant's actions constituted deliberate indifference to Plaintiff's serious medical needs, so Plaintiff meets the first prong.  For the second prong, Defendant argues that "[s]ince there is no precedent from the Sixth Circuit or the Supreme Court that establishes beyond debate that the Eighth Amendment entitles Plaintiff to have his alleged nasal problems repaired surgically as opposed to the ongoing medical care and treatment he receives from Defendant's medical staff," he is entitled to qualified immunity.  (Doc. 20 at 13).  But "the very action in question" must not be held unlawful in previous cases to overcome a defense of qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   Rather, the unlawfulness of Defendant's conduct "must be apparent" when "viewed in the light of pre-existing law." *Id.* (citing cases).  And despite Defendant's arguments, the case law in this area is "sufficiently clear" to have put Defendant on notice that his alleged conduct violated Plaintiff's rights under the Eighth Amendment. *Id.* at 640.  Namely, the Sixth Circuit has held that when a prison official provides ineffective medication to a prisoner, despite the availability of more effective treatment options, that conduct could violate the Constitution. *See Darrah*, 865 F.3d at 373–74; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991) ("[T]his

court held that a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering.").

Therefore, the Undersigned **RECOMMENDS** that Defendant's Motion for summary judgment be **DENIED** and that Plaintiff be allowed to proceed on his Eighth Amendment claim.

## IV.    CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. 20) be **DENIED.**

### <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: January 2, 2024                     /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE