UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE STOUTAMIRE, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:22-cv-2037 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| DR. ANDREW EDDY | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (ECF No. 20). In her Report and Recommendation ("R&R"), the United States Magistrate Judge recommended that this Court:

• Deny Defendant's Motion for Summary Judgment (ECF No. 20).

(ECF No. 42 at 1). For the reasons set forth below, Defendant's Motion is **DENIED**.

I. BACKGROUND

Plaintiff is a *pro se* inmate incarcerated at the Chillicothe Correctional Institution ("CCI") in Chillicothe, Ohio. Plaintiff brings the present action under 42 U.S.C.§ 1983, alleging that Defendant acted with deliberate indifference to his medical needs when he denied the request for Plaintiff to see a specialist. (ECF No. 5 at 5). On August 17, 2022, Defendant moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), alleging that the Complaint fails to state a claim upon which relief can be granted. (ECF No. 7 at 1). On October 13, 2022, the United States Magistrate Judge issued a Report and Recommendation, (ECF No. 10) recommending that this Court deny Defendant's Motion to Dismiss because the Plaintiff had failed to state a claim. (ECF No. 7). This Court adopted that Report and Recommendation. (ECF No.

12). Defendant has now filed a Motion for Summary Judgement (ECF No. 20), to which Plaintiff has properly replied (ECF No. 28). The Motion is now ripe for consideration.

## II. STATEMENT OF FACTS

During the events in question, Defendant Dr. Andrew Eddy served as State Medical Director for the Ohio Department of Rehabilitation and Corrections ("ODRC") and oversaw ODRC's collegial review recommendations. (ECF No. 20 at 2; ECF No. 28-1 at 4–7). Shortly after Plaintiff arrived at CCI in 2021, he reported sinus issues that he had been dealing with for "some time" to an institution physician, Dr. Sonya Peppers. (ECF No. 5 at 5). In or about August of 2021, Dr. Peppers ordered a CT scan for Plaintiff. (*Id.*). The CT scan confirmed that Plaintiff had a deviated septum and scarring in the lining of his sinus cavities. (*Id.*). Plaintiff argues that, as a result of the CT scan, Dr. Peppers sent a request to the ODRC recommending that Plaintiff see an ear, nose, and throat specialist. (*Id.*). Plaintiff further argues that Defendant denied the request, and Plaintiff was thus unable to see a specialist for medical attention. (*Id.*). Defendant instead recommended Flonase to treat Plaintiff, arguing that he denied the referral "[b]ecause it was judged to be medically unnecessary." (ECF No. 28-1 at 7). Plaintiff appears to have used Flonase since at least 2018 according to the available medical records, but Defendant argues that Plaintiff failed to use Flonase as recommended (ECF No. 20 at 4–8), while Plaintiff argues that he consistently used Flonase from 2018 until 2021, with no improvement. (ECF No. 41 at 6).

In reviewing the medical records, this Court has found that Plaintiff was diagnosed with "chronic sinusitis" in 2017 (ECF No. 20-1 at 12–14). In 2018, Plaintiff went to a medical appointment for complaints that his "sinuses are always filled with mucous," causing him frequent headaches. (*Id.* at 16). Plaintiff tried "steroids by mouth, antibiotics, [and] nasal steroids," all to no avail. (*Id.*). A nasal endoscopy found "mild SD and turbinate hypertrophy," and medical staff

2

concluded surgery may be necessary. (*Id*. at 18). It was at this point that Plaintiff was prescribed Flonase. (*Id*. at 18–19). In September 2018 and early 2019, however, Plaintiff shared that the Flonase provided no "therapeutic benefit." (ECF No. 41 at 15; ECF No. 20-1 at 21). In August 2019, Plaintiff underwent surgery ("nasal endoscopy, coblation of inferior turbinates, and outfracture of inferior turbinates") for his condition. (ECF No. 20-1 at 22, 29). Plaintiff's condition appeared to improve, and he was again prescribed Flonase. (*Id*. at 36, 38). Plaintiff's sinus issues resurfaced in spite of his "nightly" use of Flonase. (*Id*. at 39, 41, 42). Again, in both 2019 and 2020, Plaintiff reported that the Flonase was ineffective even though he had been "100% complian[t]." (ECF No. 41 at 14, 17).

Shortly after Plaintiff arrived at CCI in 2021, he reported his sinus issues to Dr. Peppers. (ECF No. 5 at 5). Dr. Peppers ordered a CT scan, which confirmed Plaintiff's deviated septum and scarring. (*Id*.). Dr. Peppers then recommended that Plaintiff see an ear, nose, and throat specialist, which Defendant denied on July 29, 2021 and instead provided an "alternative plan of care" of Flonase. (ECF No. 28-1 at 9; ECF No. 20-1 at 7). Defendant argues that he denied the referral "[b]ecause it was judged to be medically unnecessary." (ECF No. 28-1 at 7). He claims that Plaintiff was prescribed over-the-counter Flonase but refused to follow the treatment plan. (ECF No. 20 at 4, 11). In response, Plaintiff claims that he did indeed take the Flonase as required but that it was ineffective. (ECF No. 27 at 2). Plaintiff submitted informal complaints, grievances, and appealed the denial to the "institutional inspector," all unsuccessful. (ECF No. 5 at 3).

On July 25, 2022, Plaintiff filed the original Complaint alleging that, because of Defendant's denial of Dr. Peppers's recommendation, he had been denied proper treatment for his deviated septum and for the scarring in the lining of his sinus cavities. (*Id*.). Plaintiff also confirmed that he exhausted all routes of administrative relief: filing a complaint, a grievance, and

3

an appeal to the institutional inspector. (ECF No. 5 at 3). Plaintiff's complaint initially sought $100,000 in compensatory damages from both Dr. Peppers and Dr. Eddy, and $250,000 in punitive damages. (ECF No. 5 at 6). After screening the Complaint, however, the United States Magistrate Judge concluded that only Plaintiff's claim against Dr. Eddy could proceed. (ECF No. 4 at 4). This Court now turns to Defendant's Motion for Summary Judgment (ECF No. 20).

## III.     PROCEDURAL BACKGROUND

Plaintiff brings the present action under 42 U.S.C.§ 1983, arguing that Defendant acted with deliberate indifference to his medical needs when he denied the request for Plaintiff to see a specialist. (ECF No. 5). In addition to damages, Plaintiff seeks an injunction requiring Defendant to allow him to see a specialist. (ECF No. 5 at 6). On August 17, 2022, Defendant filed a Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff failed to state a claim in his Complaint. (ECF No. 7 at 1). A response was due from Plaintiff on September 7, 2022, but Plaintiff did not submit his response to the CCI mailroom (Plaintiff is entitled to the mailbox rule for his filings) until September 18, 2022. (ECF No. 8 at 7). In the interest of resolving the Motion on its merits, however, this Court considered Plaintiff's response and denied Defendant's Motion to Dismiss. (ECF No. 12).

On June 15, 2023, Defendant filed the present Motion for Summary Judgment. (ECF No. 20). In it, he alleges that Plaintiff was prescribed over-the-counter Flonase in February 2022, but refused to follow the treatment plan since December 15, 2021. (ECF No. 20 at 4, 11). Plaintiff alleges that he did indeed take the Flonase as required, but that it "did not help or alleviate [his] issues." (ECF No. 27 at 2). Defendant's claim that Plaintiff did not follow his treatment plan relied on medical records from December 2017 to February 2022. (ECF No. 20 at 4-8). Plaintiff responded that Defendant's view of his medical history was a selective one, and that Plaintiff's

4

medical records from 2014 to 2017 would provide a more complete picture. (ECF No. 20 at 2). On September 14, 2023, this Court ordered Defendant to produce Plaintiff's medical record from 2014 to 2022 because the records are relevant to Plaintiff's claim of whether he had been denied appropriate medical care for his deviated septum and sinus scarring. (ECF No. 31).

On October 26, 2023, Plaintiff filed a motion under Federal Rule of Civil Procedure 37(b)(2) seeking sanctions, alleging that Defendant failed to provide access to his medical records in accordance with this Court's order. (ECF No. 34). Plaintiff also argued that Defendant's failure to provide the medical records violated the rules of discovery under Federal Rule of Civil Procedure 25(a). (*Id.*). Defendant responded, arguing that he did indeed provide Plaintiff access to the medical records. (ECF No. 36). Defendant claims that on or before August 30, 2023, "institutional medical staff was told to provide Plaintiff access to his medical records." (ECF No. 36 at 1).

On October 6, 2023, one Captain Gillespie contacted Plaintiff to follow-up on the records and schedule a meeting with a registered nurse so that he could designate which of his medical records should be copied. (ECF No. 36). Defendant claims that Plaintiff refused, stating that this Court's order required that he receive copies of all of them regardless of their relevance. (*Id.*). Plaintiff was then instructed to meet with the CCI Administrative Assistant so that the records particularly relating to Plaintiff's sinus medication from 2014 to 2022 could be designated for copying. (*Id.*). Defendant argues that Plaintiff refused this as well. (*Id.*).

On October 26, 2023, Plaintiff filed a Motion to Compel (ECF No. 34), arguing that Defendant had not supplied the medical records to him and that, as a result, he had not been able to file his sur-reply by the deadline set by this Court of November 2, 2023. (ECF No. 31). Plaintiff

5

also alleges that he sent a letter to Defendant's counsel regarding this issue but has not received a response. (ECF No. 34 at 3).

### IV. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Evidence that is "merely colorable" or "not significantly probative" will not defeat summary judgment. *Id*. at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion, as well as "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

"The Court views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Even so, "[t]he mere existence of a scintilla of evidence to support [the nonmovant's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [nonmovant]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). As explained by the Sixth Circuit, "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

A pro se prisoner is unlikely to understand the complexity of federal law regarding prisoner rights, and hence we read a prisoner's complaint liberally. *Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010). Further still, "a pro se complaint that alleges deliberate indifference to a prisoner's medical needs is to be liberally construed." *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983).

## V. LAW AND ANALYSIS

### A. Deliberate Indifference

Given Plaintiff's *pro se* status, this Court is bound to construe Plaintiff's argument liberally. *Id.* In this case, Plaintiff is proceeding as a *pro se* litigant alleging a deliberate indifference to his medical needs. Further, factual evidence is viewed in the light most favorable to the non-moving party – in this case, Plaintiff – in a motion for summary judgement. *Barrett*, 556 F.3d 502, 511.

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Wilson v. Seiter*, 501 U.S. 294 (1991). This formulation has both a subjective and an objective component. Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately described as "deliberate indifference." Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial." *Leonard v. Ohio*, No. 2:09-CV-950, 2013 WL 1190204 at *2 (S.D. Ohio Mar. 22, 2013).

7

*1. Subjective Element*

As to the subjective element, in *Farmer v. Brennan*, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety...." *Id.* at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. *Id.* Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. § 1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. 97, 106; *see also Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994). In cases concerning medical care in prisons, however, "less flagrant conduct may constitute deliberate indifference." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).

Plaintiff argues that he followed his treatment plan and took Flonase for years, but that it was ineffective and that Defendant denied his referral to a specialist only to place him back on Flonase. (ECF No. 28). Here, the record shows that CCI personnel were aware of this ineffective treatment, which supports Plaintiff's conclusion that Defendant may have been aware of the

8

ineffectiveness of the Flonase treatment when he reviewed Plaintiff's records and again recommended Flonase in July 2021, thereby meeting the subjective standard in *Farmer*. (ECF No. 20-1 at 2). *Comstock v. McCrary*, 272 F.3d 693, 703 (6th Cir. 2001) (finding that reviewing courts may infer from circumstantial evidence that a prison official had the requisite knowledge in question). Plaintiff argues that this treatment was therefore "so cursory as to amount to a conscious disregard" of his medical needs. (ECF No. 41 at 15–16). *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014). The record thus reveals that Defendant was "aware of facts from which [an] inference could be drawn that a substantial risk of serious harm" exists. *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018). As in *Comstock*, this Court may find that Defendant indeed drew that inference. *Comstock*, 272 F.3d 693, 703. Accordingly, Defendant's arguments fail to defend against the subjective element.

## 2. Objective Element

The objective component requires that the deprivation of medical treatment be "sufficiently serious." *Farmer*, 511 U.S. 825, 834. A sufficiently serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 891 (6th Cir. 2004).

Here, Plaintiff argues that Defendant was deliberately indifferent to his medical care in denying him treatment for his deviated septum. (ECF No. 28 at 7). As discussed in the subjective analysis, Plaintiff argues that he followed his treatment plan and took Flonase for years, but that it was ineffective and that Defendant denied his referral to a specialist only to place him back on Flonase. (ECF No. 28). In this way, Plaintiff's medical needs have "been diagnosed by a physician as mandating treatment," meeting the objective standard in *Farmer*, 511 U.S. 825, 839, as he has

received multiple medications, medical scans, and even surgery for his sinus conditions. *See Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Plaintiff's medical records evince that Plaintiff was fully compliant with his Flonase treatment plan and experienced no improvement. (ECF No. 41 at 14).

Defendant argues that such deliberate indifference was impossible, maintaining that even when viewing the evidence in the light most favorable to Plaintiff,

> the record clearly establishes that he has received far more than conservative medical care and treatment for his deviated septum and alleged scaring of his sinus cavities, including multiple imaging scans, nasal endoscopy, coblation and outfracture of his inferior turbinates, and sinus surgery.

*Id.* Viewing Plaintiff's claims in the most favorable light, however, the evidence would suggest that Dr. Peppers determined that Plaintiff's issue was severe enough to warrant referral to an ENT specialist. (ECF No. 5 at 5). Defendant provides no medical reason why Plaintiff was denied, only that Plaintiff's request to see a specialist was deemed "medically unnecessary." (ECF No. 28-1 at 7). Nor has Defendant provided evidence or expert statements explaining the criteria for a specialist visit, or offered any evidence supporting his conclusion that Flonase was appropriate for Plaintiff after years of use with no success. *Cf. Estelle*, 429 U.S. 97, 107 (1976) (noting that prison officials treated a prisoner's back injury with bed rest, muscle relaxants, and pain relievers, rather than ordering an x-ray, but such treatment did not show deliberate indifference). Thus, Defendant's arguments again fail to defend against the objective standard in *Farmer*, 511 U.S. 825, 839. It is clear from Plaintiff's treatment records that his medical needs were "diagnosed by a physician as mandating treatment." Combining these two analyses, Plaintiff has established a deliberate indifference claim at this stage.

\* \* \*

This dispute amounts to a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. 317, 323. Whether Dr. Peppers made this referral speaks directly to the level of care that Plaintiff needed and received. Viewing Plaintiff's arguments liberally leads to the conclusion that Dr. Peppers did indeed make such a referral and that Defendant denied Plaintiff the care he needed. Similarly, whether Plaintiff adhered to his prescribed treatment plan reflects the level of care he received and his own level of compliance. *Klancar v. Hartford Life & Accident Ins. Co.*, No. 1:20-cv-730, 2021 WL 5866907 at *30 (S.D. Ohio Dec. 12, 2021) (noting that noncompliance with a treatment regime may be used by an administrator in deciding whether disability benefits are proper). This Court will not venture into hypotheticals about Plaintiff's medical treatment. Again, present here is a genuine dispute of material fact in relation to Plaintiff's claim of deliberate indifference. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. 317, 323. Viewing the facts as required at this stage, Plaintiff followed his course of treatment but it simply did not remedy his issues. The actual truth of the matter is for a jury to determine; for this Court to do so in this Order would be inappropriate. *Anderson*, 477 U.S. 242, 249 ("[the Court's role is not] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

This case is similar to *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017). There, the Sixth Circuit denied summary judgment where prison medical personnel prescribed a drug to treat a prisoner's severe psoriasis, even though the prisoner repeatedly told them that it was ineffective and there were more effective treatments available. *Darrah*, 865 F.3d at 369–70, 372–73. Here, analogous facts are present. It is clear that Flonase has been "essentially the equivalent of no treatment at all." (ECF No. 28 at 16). *Id*. at 370. "The question of whether it was reasonable to continue to keep [Plaintiff] on a drug that had proven ineffective and whether that course of treatment constituted deliberate indifference is a question best suited for a jury." *Id*. This Court

11

agrees. Finally, "the medical opinion and diagnoses of … treating physicians … are generally accorded substantial deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Plaintiff's treating physician's decision to refer Plaintiff to a specialist should be deferred to, and Defendant's alleged denial of said referral amounted to deliberate indifference for falling short of this deference. Accordingly, Defendant's claim must fail as it relates to deliberate indifference.

### B. Qualified Immunity

Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted)). Qualified immunity is a two-step analysis: this Court must determine whether the officers violated Plaintiff's constitutional rights, and if so, whether those rights were clearly established at the time. *Pearson*, 555 U.S. at 236. In this context, "clearly established" means "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted)). Courts must "define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Such specificity is "especially important in the Fourth Amendment context" because of the highly fact intensive nature of the inquiry. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "Although . . . qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002).

Defendant raises a brief argument that he is entitled to qualified immunity. Qualified immunity is typically used to defeat § 1983 claim against officials whose conduct did "not violate clearly established statutory or constitutional rights." *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008). However, lacking precedent from the Sixth Circuit or the Supreme Court, this Court finds this Order for summary judgment to be an improper place to establish new caselaw. The scope here is narrow: in a light most favorable to Plaintiff, there is enough of a factual dispute that a jury could find for either party. As such, there is a genuine dispute of material fact as to whether Defendant's actions violated Plaintiff's constitutional right, so Plaintiff meets the first prong. As to the second prong, Defendant argues that this very lack of precedent entitles him to qualified immunity. (ECF No. 20 at 13). Exact precedent, however, is not the standard under which Defendant's actions are analyzed; rather, it simply "must be apparent" to the Defendant that his conduct was unlawful when "viewed in the light of pre-existing law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Here, the caselaw that does exist is "sufficiently clear" enough that Defendant could have known that his alleged conduct violated Plaintiff's rights under the Eighth Amendment. *Id.* Indeed, the Sixth Circuit has held that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991). Further, a constitutional violation could be present when a prison official provides ineffective medication to a prisoner despite more effective options being available. *Darrah*, 865 F.3d 361, 373-74. In light of the above, Plaintiff must be permitted to proceed in this matter.

## VI. CONCLUSION

This Court concludes that the Magistrate Judge did not err in recommending that Defendant's Motion be denied. Furthermore, this Court's independent review of the entire record

13

convinces this Court that the Magistrate Judge's decision enjoys substantial support and complied with all applicable standards. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 20) is **DENIED**.

    **IT IS SO ORDERED.**

                                           **ALGENON L. MARBLEY**
                                           **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 29, 2024**