UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DWAYNE STOUTAMIRE,                    :
                                      :
            Plaintiff,                :     Case No. 2:22-cv-2037
                                      :
      v.                              :     Chief Judge Algenon L. Marbley
                                      :
DR. ANDREW EDDY                       :     Magistrate Judge Kimberly A. Jolson
                                      :
            Defendant.                :

## OPINION & ORDER

This matter comes before this Court on Defendant's Motion for Summary Judgment (ECF No. 20). In her Report and Recommendation ("R&R"), the United States Magistrate Judge recommended that this Court deny Defendant's Motion for Summary Judgment (ECF No. 20). (ECF No. 42 at 1). For the reasons set forth below, the R&R is **ADOPTED** and Defendant's Motion is **DENIED**.

## I.    BACKGROUND

### A.  Statement of Facts

Plaintiff is a *pro se* inmate incarcerated at the Chillicothe Correctional Institution ("CCI") in Chillicothe, Ohio. During the events in question, Defendant Dr. Andrew Eddy served as State Medical Director for the Ohio Department of Rehabilitation and Corrections ("ODRC") and oversaw ODRC's review recommendations. (ECF No. 20 at 2; ECF No. 28-1 at 4–7). The parties dispute some of the facts relevant to this Court's analysis, so this Court clarifies its understanding of the facts, highlighting where the parties diverge.

Plaintiff was diagnosed with "chronic sinusitis," or chronic inflammation of his sinus and nasal passages, in 2017 (ECF No. 20-1 at 12–14). In 2018, Plaintiff went to a medical appointment

for complaints that his "sinuses are always filled with mucous," causing him frequent headaches. (*Id.* at 16). Plaintiff tried "steroids by mouth, antibiotics, [and] nasal steroids," all to no avail. (*Id.*). A nasal endoscopy found "mild [septum deviation] and turbinate hypertrophy," and medical personnel concluded surgery may be necessary. (*Id*. at 18). Plaintiff was soon prescribed Flonase, an over-the-counter steroid, to combat his symptoms. (*Id*. at 18–19). In September 2018 and early 2019, however, Plaintiff shared that the Flonase provided no "therapeutic benefit." (ECF No. 41 at 15; ECF No. 20-1 at 21). In August 2019, Plaintiff underwent surgery ("nasal endoscopy, coblation of inferior turbinates, and outfracture of inferior turbinates") for his chronic sinusitis. (ECF No. 20-1 at 22, 29). Plaintiff's condition appeared to improve after the surgery, and he was again prescribed Flonase. (*Id*. at 36, 38). Plaintiff's sinus issues soon resurfaced in spite of his "nightly" use of Flonase. (*Id*. at 39, 41, 42). Again, in both 2019 and 2020, Plaintiff reported that the Flonase was ineffective even though he had been "100% complian[t]," (ECF No. 41 at 14, 17), though Defendant argues otherwise (ECF No. 20 at 4–8).

Shortly after Plaintiff began his term of incarceration at CCI in 2021, he reported sinus issues that he had been dealing with for "some time" to an institution physician, Dr. Sonya Peppers. (ECF No. 5 at 5). In or around August of 2021, Dr. Peppers ordered a CT scan for Plaintiff. (*Id.*). The CT scan confirmed that Plaintiff had a deviated septum and scarring in the lining of his sinus cavities. (*Id.*). As a result of the CT scan, Dr. Peppers sent a request to the ODRC recommending that Plaintiff see an ear, nose, and throat specialist. (*Id.*). Defendant denied this request "[b]ecause it was judged to be medically unnecessary," and instead provided an "alternative plan of care," prescribing Plaintiff a course of Flonase. (ECF No. 28-1 at 7, 9; ECF No. 20-1 at 7).

### B.  Procedural History

As a result of the specialist-referral denial, Plaintiff submitted informal complaints, grievances, and appealed the denial to the "institutional inspector," to no avail. (ECF No. 5 at 3). Plaintiff therefore filed a Complaint with this Court alleging that, because of Defendant's denial of Dr. Peppers's recommendation, Plaintiff had been denied proper treatment for his deviated septum and for the scarring in the lining of his sinus cavities. (*Id.*). Plaintiff also confirmed that he exhausted all routes of administrative relief: filing a complaint, a grievance, and an appeal to the institutional inspector. (ECF No. 5 at 3). Plaintiff's Complaint initially sought $100,000 in compensatory damages from both Dr. Peppers and Dr. Eddy, and $250,000 in punitive damages. (ECF No. 5 at 6). After screening the Complaint, however, the United States Magistrate Judge concluded that only Plaintiff's claim against Dr. Eddy could proceed. (ECF No. 4 at 4).

On August 17, 2022, Dr. Eddy (now "Defendant") filed a Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff failed to state a claim in his Complaint. (ECF No. 7 at 1). A response was due from Plaintiff on September 7, 2022, and while Plaintiff is entitled to the mailbox rule for his filings, Plaintiff did not submit his response to the CCI mailroom until September 18, 2022. (ECF No. 8 at 7). In the interest of resolving the Motion on its merits, however, this Court considered Plaintiff's response and denied Defendant's Motion to Dismiss. (ECF No. 12).

On June 15, 2023, Defendant filed the present Motion for Summary Judgment. (ECF No. 20). In it, he argues that Plaintiff was prescribed over-the-counter Flonase in February 2022, but that Plaintiff has refused to follow the treatment plan since December 15, 2021. (ECF No. 20 at 4, 11). Plaintiff alleges that he did indeed take the Flonase as required, but that it "did not help or alleviate [his] issues." (ECF No. 27 at 2).

Defendant's claim that Plaintiff did not follow his treatment plan relied on medical records from December 2017 to February 2022. (ECF No. 20 at 4-8). Plaintiff responded that Defendant's view of his medical history was a selective one, and that Plaintiff's earlier medical records, those from 2014 to 2017, would provide a more complete picture. (ECF No. 20 at 2). On September 14, 2023, this Court ordered Defendant to produce Plaintiff's medical records from 2014 to 2022 because the records are relevant to Plaintiff's claim of whether he had been denied appropriate medical care for his deviated septum and sinus scarring. (ECF No. 31).

On October 6, 2023, a CCI Captain contacted Plaintiff to follow-up on the records and schedule a meeting with a registered nurse so that he could designate which of his medical records should be copied. (ECF No. 36). Defendant claims that Plaintiff refused this meeting, stating that this Court's order required that he receive copies of all of his records, regardless of their relevance. (*Id.*). Plaintiff was then instructed to meet with a CCI Administrative Assistant so that the records particularly relating to Plaintiff's sinus medication from 2014 to 2022 could be designated for copying. (*Id.*). Defendant argues that Plaintiff refused this as well. (*Id.*).

On October 26, 2023, Plaintiff filed a Motion to Compel (ECF No. 34) under Federal Rule of Civil Procedure 37(b)(2) seeking sanctions, arguing that Defendant had not supplied the medical records to him and that, as a result, he had not been able to file his sur-reply by the November 2, 2023 deadline set by this Court. (ECF No. 31). Plaintiff argues that Defendant's failure to provide the medical records violated the rules of discovery under Federal Rule of Civil Procedure 25(a). (*Id.*). Defendant responded, arguing that he did indeed provide Plaintiff access to the medical records. (ECF No. 36). Defendant claims that on or before August 30, 2023, "institutional medical staff was told to provide Plaintiff access to his medical records." (ECF No. 36 at 1). Plaintiff argues that he sent a letter to Defendant's counsel regarding this issue but has not received a response.

4

(ECF No. 34 at 3). The United States Magistrate Judge granted in part and denied in part the Motion to Compel, ordering Defendant to produce Plaintiff's entire medical record from 2014 to 2022. (ECF No. 37).

The R&R recommends that Defendant's Motion be denied on the grounds that the record offers no medical reason why Plaintiff was denied an opportunity to see a specialist or why Flonase was recommended instead of an alternative treatment. (ECF No. 42 at 8). The R&R reasons that the question of whether it was reasonable to continue to keep Plaintiff on a drug that had proven ineffective and whether that course of treatment constituted deliberate indifference is a question best suited for a jury. (ECF No. 42 at 10). Defendant objects, arguing that he could not have been deliberately indifferent because Plaintiff's treatment plan neither ignored nor delayed a more effective treatment modality. (ECF No. 53 at 6). This Court now turns to Defendant's Motion for Summary Judgment. (ECF No. 20).

## II.    STANDARD OF REVIEW

If a party objects within fourteen days to the Magistrate Judge's proposed findings and recommendations, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). The district court may "accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions." Fed. R. Civ. P. 72(b).

A party's objection should be specific, identify the issues of contention, and "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The onus is on the objecting party "to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira*

*v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quotation marks and citation omitted). When a pleader fails to raise specific issues, the district court will consider this to be "a general objection to the entirety of the magistrate report[, which] has the same effects as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

As noted above, the R&R in this case arises from Defendant's Motion for Summary Judgment (ECF No. 20).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Evidence that is "merely colorable" or "not significantly probative" will not defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion, as well as "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

"The Court views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502,

511 (6th Cir. 2009). Even so, "[t]he mere existence of a scintilla of evidence to support [the nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). As explained by the Sixth Circuit, "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

A *pro se* prisoner is unlikely to understand the complexity of federal law regarding prisoner rights, and hence we read a prisoner's complaint liberally. *Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010). Further still, "a *pro se* complaint that alleges deliberate indifference to a prisoner's medical needs is to be liberally construed." *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983). Finally, while *pro se* plaintiffs are sometimes held to less stringent standards than represented parties, they must still meet minimal standards under the Federal Rules of Civil Procedure. *See Perry v. United Parcel Serv.*, 90 F. App's 860, 861 (6th Cir. 2004).

### III.    LAW AND ANALYSIS

#### A.  Deliberate Indifference

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Wilson v. Seiter*, 501 U.S. 294 (1991). This formulation has both a subjective and an objective component. *Dominguez v. Correctional Medical Serv.*, 555 F.3d 543, 550 (6th Cir. 2009). Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately be described as "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Objectively, the medical condition at issue must be "serious" as opposed to "trivial,"

"minor," or "insubstantial." *Id*. A medical need is "objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004).

### 1.  Subjective Element

As to the subjective element, in *Farmer v. Brennan*,  the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. 511 U.S. 825, 839 (1994). In so doing, it held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. *Id.* Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. 97, 106 "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. 97, 106; *see also Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994).

In cases concerning medical care in prisons, however, "less flagrant conduct may constitute deliberate indifference." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th

Cir. 2002). "However, the Sixth Circuit has also recognized that [p]rison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment." *Jones v. Muskegon Cnty.*, 625 F.3d 938, at 944-45 (6th Cir. 2010). Critically, the Sixth Circuit has held that "deliberate indifference may be established in cases where it can be shown that a defendant rendered grossly inadequate care or made a decision to take an easier but less efficacious course of treatment." *Id.*

Plaintiff here argues that he followed his treatment plan and took Flonase for years, but that it was ineffective and that Defendant denied his referral to a specialist only to place him back on Flonase. (ECF No. 28). The record shows that CCI personnel were aware of this ineffective treatment. As this circuit has held that reviewing courts may infer from circumstantial evidence that a prison official had the requisite knowledge in question, *Comstock v. McCrary*, 272 F.3d 693, 703 (6th Cir. 2001), this evidence supports Plaintiff's conclusion that Defendant himself may have been aware of the ineffectiveness of the Flonase treatment when he reviewed Plaintiff's records and again recommended Flonase in July 2021. (ECF No. 20-1 at 2). Based on this, this Court may infer from the record that Defendant indeed had the requisite knowledge of Plaintiff's condition and therefore concludes that Defendant's conduct meets the subjective element of deliberate indifference.

The United States Magistrate Judge reached a similar conclusion, finding that a genuine dispute of material fact remains as to whether Defendant's actions were medically reasonable or amounted to deliberate indifference in violation of the Eighth Amendment. (ECF No. 42 at 9). In Defendant's Objection (ECF No. 53 at 7), he argues that Plaintiff cannot meet the subjective element because "when a medical professional has provided treatment to the prisoner, to establish the subjective component [of a deliberate indifference claim], the prisoner must show that the

9

defendant "consciously expose[d] [him] to an excessive risk of serious harm."" *Crump v. Coleman*, No. 20-2084, 2022 WL 1421968, at *14 (6th Cir. Jan. 6, 2022). According to Defendant, because Plaintiff was offered alternative treatments, Defendant could not have "consciously exposed" Plaintiff to an excessive risk of serious harm. But Plaintiff argues that these alternative treatments were "so cursory as to amount to a conscious disregard" of his medical needs. (ECF No. 41 at 15-16). *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014). Plaintiff is correct that where a physician is subjectively aware of the seriousness of a medical condition, a decision to treat a patient "only with over-the-counter medication" may be cursory. *Id.*

This cursory, "over-the-counter" treatment is exactly of the sort that Plaintiff received. Defendant merely re-prescribed Plaintiff with Flonase, an over-the-counter medication. As discussed *infra*, the record shows that Plaintiff notified medical officials at CCI about his prior unsuccessful experience with Flonase, from which this Court can conclude that Defendant could have been aware of Flonase's alleged ineffectiveness for Plaintiff. (ECF No. 20-1 at 2 (telling CCI medical staff Flonase "does not work")). *See Crump*, 2022 WL 1421968, at *5 (finding that even though a prison doctor conducted tests to diagnose the cause of a prisoner's ailments, a reasonable juror could have found him deliberately indifferent to the prisoner's pain where the prisoner reported that his prescribed medications did not help him and the doctor never recommended another drug or increased dosages); *Sedore v. Campbell*, No. 19-10311, 2022 WL 4483815, at *2 (E.D. Mich. Sept. 27, 2022) (finding that a prisoner's deliberate indifference claim should proceed to a jury where a prisoner was allegedly prescribed ineffective treatments by prison officials). Viewing the evidence in the light most favorable to Plaintiff, the record thus reveals that Defendant was "aware of facts from which [an] inference could be drawn that a substantial risk of serious harm" exists. *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018). As in *Comstock*, this Court

may find that Defendant indeed drew that inference. *Comstock*, 272 F.3d 693, 703. Accordingly, Defendant's arguments fail to defend against Plaintiff's demonstration of the subjective element.

## 2. *Objective Element*

The objective component requires that the deprivation of medical treatment be "sufficiently serious." *Farmer*, 511 U.S. 825, 834. A sufficiently serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 891.

Here, Plaintiff argues that his deviated septum is a serious medical need and that Defendant's evaluation and treatment was insufficient. (ECF No. 5 at 5). As discussed in the subjective analysis, Plaintiff asserts that he followed his treatment plan and took Flonase for years, but that it was ineffective and that Defendant denied his referral to a specialist only to place him back on Flonase. (ECF No. 28). In an attempt to remedy his sinus issue, Plaintiff has received multiple medications, medical scans, and even surgery for his sinus conditions. Based on these facts alone, Plaintiff's medical needs have "been diagnosed by a physician as mandating treatment," thereby satisfying the objective standard in *Farmer*. *See Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

Defendant does not contest any of the United States Magistrate Judge's factual findings. (*See* ECF No. 53). Instead, he attempts only to undermine the seriousness of Plaintiff's medical condition, noting that "the July 19, 2021 CT … showed nothing more than some mild maxillary sinus disease" and claiming that there is no indication that surgery for Plaintiff's condition arose to a serious medical need. (ECF No. 53 at 3, 8). But this evaluation ignores the fact that Plaintiff suffers from a deviated septum, a condition which this Court has previously accepted as a serious medical condition. *Stoutamire v. Eddy*, No. 2:22-CV-02037, 2022 WL 7483020, at *3 (S.D. Ohio

Oct. 13, 2022) (quoting *Rodriguez v. Lappin*, No. 08-347-GFVT, 2009 WL 2969510, at *5 (E.D. Ky. Sept. 11, 2009)) ("This Court is willing to accept that a deviated septum is a serious medical condition, which finding satisfies the objective element of an Eight Amendment claim."), *report and recommendation adopted,* No. 2:22-CV-2037, 2023 WL 2241403 (S.D. Ohio Feb. 27, 2023). And as discussed above, Plaintiff's treatment records make clear that his serious medical needs were "diagnosed by a physician as mandating treatment." *Blackmore*, 390 F.3d at 891. In sum, Plaintiff suffers from a diagnosed serious medical condition, and Defendant met this need with subjective and objective deliberate indifference. *Estelle*, 429 U.S. 97; *Wilson*, 501 U.S. 294. Plaintiff has therefore established a deliberate indifference claim at this stage.

Tying this back to the summary judgment standard, the parties' dispute over the seriousness of Plaintiff's condition, and whether Defendant's actions were medically serious, amount to a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. 317, 323. Defendant argues that such deliberate indifference was impossible, maintaining that even when viewing Plaintiff's arguments liberally,

> the record clearly establishes that he has received far more than conservative medical care and treatment for his deviated septum and alleged scaring of his sinus cavities, including multiple imaging scans, nasal endoscopy, coblation and outfracture of his inferior turbinates, and sinus surgery.

*Id.* Viewing Plaintiff's claims in the most favorable light, however, the evidence would suggest that Dr. Peppers determined that Plaintiff's issue was severe enough to warrant referral to an ENT specialist. (ECF No. 5 at 5). Defendant provides no medical reason why the referral was denied, only that Plaintiff's request to see a specialist was deemed "medically unnecessary." (ECF No. 28-1 at 7). Plaintiff's medical records also evince that Plaintiff was fully compliant with his Flonase treatment plan and experienced no improvement. (ECF No. 41 at 14). Defendant has not provided evidence or expert statements explaining the criteria for a specialist visit and why Plaintiff was

denied, nor has he offered any evidence supporting his conclusion that Flonase was appropriate for Plaintiff after years of use with no success. *Cf. Richmond*, 885 F.3d at 943 (finding that a prison official's referral for a mental health evaluation instead of a prescription for psychiatric medication was a "medically reasonable" response); *Williams v. Mehra*, 186 F.3d 685, 692 (6th Cir. 1999) (holding that prison officials were not deliberately indifferent when they gave a prisoner his medication in pill form, rather than     liquid); *Estelle*, 429 U.S. 97, 107 (1976) (noting that prison officials treated a prisoner's back injury with bed rest, muscle relaxants, and pain relievers, rather than ordering an x-ray, but such treatment did not show deliberate indifference).

In his Objection, Defendant asserts that the evidence establishes that "Plaintiff failed to abide by the Flonase trial prescribed by his ENT" and that "he also failed to use the [Flonase] and saline nasal spray his ENT prescribed for him." (ECF No. 53 at 6). According to Defendant, this means that Plaintiff's treatment – the re-prescribing of Flonase – neither ignored nor delayed a more effective treatment modality, "especially since Plaintiff failed to abide by the Flonase trial previously prescribed by his ENT." (*Id.*) But Plaintiff claims – and indeed the records show – that he was "100%" compliant with his Flonase treatment for at least one year and that he experienced no improvement after using the medication. (ECF No. 41 at 13–18). By re-prescribing a known ineffective treatment, it is possible that Defendant did indeed delay a more effective treatment modality for Plaintiff. The actual truth of the matter is for a jury to determine; for this Court to do so in this Order would be inappropriate. *Anderson*, 477 U.S. 242, 249 ("[the Court's role is not] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). So, present here is a genuine dispute of material fact in relation to Plaintiff's claim of deliberate indifference. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. 317, 323. And

13

viewing the facts as required at this stage, Plaintiff followed his course of treatment but it simply did not remedy his issues, which justifies the denial of summary judgment.

This case is similar to *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017), wherein the Sixth Circuit reversed a grant of summary judgment after prison medical personnel prescribed a drug to treat a prisoner's severe psoriasis, even though the prisoner repeatedly told them that it was ineffective and there were more effective treatments available. *Darrah*, 865 F.3d at 369–70, 372–73. Here, Flonase appears to be "essentially the equivalent of no treatment at all." *Id*. at 370; (ECF No. 28 at 16). "The question of whether it was reasonable to continue to keep [Plaintiff] on a drug that had proven ineffective and whether that course of treatment constituted deliberate indifference is a question best suited for a jury." *Id*. at 370. This Court agrees and determines that this matter is best suited for a jury, as it is clear that a genuine dispute of fact exists here, as it did in *Darrah*.

Finally, "the medical opinion and diagnoses of … treating physicians … are generally accorded substantial deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Plaintiff's treating physician's decision to refer Plaintiff to a specialist should be deferred to, and Defendant's alleged denial of said referral amounted to deliberate indifference for falling short of this deference. Accordingly, Plaintiff's claim must succeed as it relates to deliberate indifference.

## B. Qualified Immunity

Defendant also raises a brief argument that he is entitled to qualified immunity. Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted)). Qualified immunity is a

14

two-step analysis: this Court must determine whether the official violated Plaintiff's constitutional rights, and if so, whether those rights were clearly established at the time. *Pearson*, 555 U.S. at 236. In this context, "clearly established" means "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted)). Courts must "define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "Although … qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002).

The scope here is narrow: in a light most favorable to Plaintiff, there is enough of a factual dispute that a jury could find for either party on Plaintiff's deliberate indifference claim against Defendant. As such, there is a genuine dispute of material fact as to whether Defendant's actions violated Plaintiff's Eighth Amendment right, so Plaintiff meets the first prong of the qualified immunity analysis.

The clearly established prong is satisfied only when existing precedent places "the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). There need not be precisely analogous precedent barring Defendant's actions; rather, it simply "must be apparent" to the Defendant that his conduct was unlawful when "viewed in the light of pre-existing law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Defendant argues it was not apparent because there was no indication that surgery for Plaintiff's sinus condition rose to a serious medical need. (ECF No. 53 at 8). Defendant goes on to

15

state that "to the contrary, the CT scan following Plaintiff's August 20, 2019, turbinate surgery showed nothing more than a "[m]ild maxillary sinus disease as described." (*Id.*). As discussed *supra*, this argument incorrectly concludes that Plaintiff's medical needs are not serious; indeed, it entirely fails to address the serious medical need that is Plaintiff's deviated septum. *See Stoutamire*, 2022 WL 7483020, at *3; *Rodriguez*, 2009 WL 2969510, at *5 ("This Court is willing to accept that a deviated septum is a serious medical condition, which finding satisfies the objective element of an Eight Amendment claim.").

Plaintiff complained to medical staff at CCI that he suffered frequent headaches and that his sinuses were always filled with mucous. (ECF No. 20 at 16). The Sixth Circuit has held that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991). And *Darrah* held that a constitutional violation may be present when a prison official provides ineffective medication to a prisoner despite more effective options being available. *Darrah*, 865 F.3d 361, 373–74. Because this pre-existing caselaw is "sufficiently clear" to put Defendant on notice that his alleged conduct violated Plaintiff's rights under the Eighth Amendment, *Anderson*, 483 U.S. at 640, Defendant's decision to provide Plaintiff with a redundant, ineffective treatment may amount to a constitutional violation. As a result, Defendant cannot prevail on qualified immunity and Plaintiff must be permitted to proceed in this matter.

16

## IV.    CONCLUSION

For the foregoing reasons, this Court concludes that the Magistrate Judge did not err in recommending that Defendant's Motion be denied. Furthermore, this Court's independent review of the entire record convinces this Court that the Magistrate Judge's decision meets all applicable standards. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 20) is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  July ___, 2024**

17